# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| E.B. *et al.*, <br><br> *Plaintiff*, <br><br> v. <br><br> U.S. DEPARTMENT OF STATE *et al.*, <br><br> *Defendants*. | Civil Action No. 19-2856 (TJK) |

## MEMORANDUM OPINION

In this lawsuit, three foreigners and two of their U.S.-based relatives allege that the State Department issued a rule unlawfully by not following the ordinary notice-and-comment rulemaking procedures. The rule requires that any individual who seeks to participate in the annual diversity visa lottery must possess a valid passport from her home country when she registers for it. Plaintiffs have moved for a preliminary injunction, arguing that they will be irreparably harmed because the regulation effectively precludes them from participating in this year's lottery. Defendants argue that Plaintiffs lack standing and are otherwise not entitled to such an injunction. For the reasons explained bel, the Court holds that Plaintiffs are substantially likely to have standing but have failed to show that they are likely to suffer irreparable harm absent an injunction. The Court will therefore deny their motion.

**I.  Background**

    **A.  Diversity Visa Program**

The Immigration and Nationality Act of 1990 (INA) established the Diversity Visa Program. Pub. L. No. 101-649, § 131, 104 Stat. 4978, 4997 *et seq.* (1990) (codified at 8 U.S.C. § 1153(c)). The law allows the State Department to issue 50,000 diversity visas annually to individuals from countries and regions that have historically sent fewer immigrants to this

country.[1]  *See id.*; 8 U.S.C. § 1151(e).  Potential immigrants are selected "strictly in a random order established by the Secretary of State."  8 U.S.C. § 1153(e)(2).  The process begins with the diversity visa lottery (the "lottery").  About 14 million individuals from qualifying countries register for the lottery annually.  84 Fed. Reg. 25,989 (codified at 22 C.F.R. § 42.33).  The State Department then selects "through a randomized computer drawing" a certain number of registrants who "may then apply for a diversity visa or, if present in the United States, apply for adjustment of status."  *Id.*  The State Department selects more than 50,000 individuals because some of them "will not qualify for visas or not pursue their cases to visa issuance."  U.S. Department of State, *Instructions for the 2021 Diversity Immigrant Visa Program (DV-2021)*, https://travel.state.gov/content/dam/visas/Diversity-Visa/DV-Instructions-Translations/DV-2021-Instructions-Translations/DV-2021-%20Instructions-English.pdf (last visited Nov. 4, 2019).

Although the precise number of selectees fluctuates each year, the odds of any individual registrant being selected are long.  For example, for Fiscal Year 2018, 115,968 individuals were selected from 14,692,258 registrants.  U.S. Department of State, *DV 2018 - Selected Entrants*, https://travel.state.gov/content/travel/en/us-visas/immigrate/diversity-visa-program-entry/dv-2018-selected-entrants.html (last visited Nov. 4, 2019).  Thus, any registrant had about a 0.8% chance of being selected.  This year, registration opened on October 2, 2019 and will close on November 5, 2019.  U.S. Department of State, *Instructions for the 2021 Diversity Immigrant Visa Program (DV-2021)*.

---

[1] Although the INA originally allocated 55,000 visas for diversity immigrants, that number has been reduced by 5,000.  *See* Nicaraguan Adjustment and Central American Relief Act, Pub. L. No 105-100, § 203(d), 111 Stat. 2160, 2199 (1997).

### B. The Passport Rule

The Secretary of State may issue regulations governing the information that lottery registrants must provide to the State Department. 8 U.S.C. § 1154(a)(1)(I)(iii). On June 5, 2019, the State Department promulgated the Passport Rule, which requires that individuals who seek to participate in the lottery must possess a valid passport when they register. 84 Fed. Reg. 25,989 (the "Passport Rule" or the "rule"); *see also* 22 C.F.R. § 42.33(b)(viii). Before enactment of the rule, a lottery participant had to possess a passport only if she was selected—*i.e.*, if she won the lottery—and she then sought to apply for a diversity visa. *See* Passport Rule; 22 C.F.R. § 42.64(b). As a result, the rule effectively imposes this requirement at any earlier point in the process. Passport Rule; *see also* 22 C.F.R. § 42.33(b)(viii). According to the State Department, the rule will help prevent fraud. *See* Passport Rule.

The State Department promulgated the Passport Rule as an interim final rule, and so it became effective upon publication. *Id.* Although the State Department informed the public that it would accept comments, it invoked the foreign affairs exception of the Administrative Procedure Act (APA), 5 U.S.C. § 553(a), and dispensed with the standard notice-and-comment procedures, *see* Passport Rule.

### C. The Instant Case

In late September 2019, Plaintiffs sued the State Department and Michael Pompeo in his official capacity as Secretary of State, alleging that their promulgation of the Passport Rule without prior notice-and-comment rulemaking was unlawful under the APA. ECF No. 1 ("Compl."). Plaintiffs allege that the APA's foreign affairs exception does not apply to the Passport Rule. *Id.* ¶ 66. As a result, they contend that Defendants unlawfully denied them and others the opportunity to participate in the rulemaking through the APA's notice and comment procedures. *Id.* ¶¶ 64–65. Plaintiffs fall into two categories. Plaintiffs E.B., K.K., and

Mehatemeselassie Ketsela Desta (collectively "Applicant Plaintiffs") are individuals who registered for the lottery previously and wish to do so again. *Id.* ¶¶ 49, 54, 59. However, they allege, the Passport Rule will preclude their participation this year because they do not have a valid passport, nor can they obtain one in time. *Id.* ¶¶ 50, 55, 60. Plaintiffs W.B. and A.K. (collectively "Family Plaintiffs") are U.S. residents who wish to reunite with their siblings, Applicant Plaintiffs E.B. and K.K., respectively. *Id.* ¶¶ 15–16.

Plaintiffs moved for a preliminary injunction barring enforcement of the Passport Rule. ECF No. 3; *see also* ECF No. 3-2 ("PI Mem."). They argue that obtaining a passport in time to participate in this year's lottery is both cost and time prohibitive. PI Mem. at 2, 8–9. Thus, without preliminary relief, "Applicant Plaintiffs will suffer irreparable harm by losing the opportunity to apply for a diversity visa in this year's lottery." *Id.* at 26. In opposition, Defendants principally argue that because Applicant Plaintiffs can rely on friends or family to help defray the cost of acquiring a passport if they win the lottery, any barrier to acquiring a passport earlier "is purely self-imposed." ECF No. 16 ("Opp'n") at 15. As a result, "Plaintiffs have not alleged a harm that is traceable to the State Department," *id.* at 16, and the Court should dismiss the complaint in its entirety for lack of standing, *id.* at 12. Plaintiffs filed a reply, ECF No. 17, and the Court held a hearing on Plaintiffs' motion on October 25, 2019.[2]

## II. Legal Standard

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of

---

[2] Citations to the October 25, 2019 hearing are to page numbers in a "rough" transcript, since the final, certified transcript is not yet available.

preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. The last two factors merge where plaintiffs seek preliminary relief against the government. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Before *Winter*, these factors were "evaluated on a 'sliding scale'" such that "an unusually strong showing on one of the factors" can make up for a weaker showing on another. *Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1291 (D.C. Cir. 2009) (quoting *Davenport v. Int'l Bhd. of Teamsters*, 166 F.3d 356, 361 (D.C. Cir. 1999)). However, the D.C. Circuit "has suggested, without deciding, that *Winter* should be read to abandon the sliding-scale analysis in favor of a 'more demanding burden' requiring plaintiffs to independently demonstrate both a likelihood of success on the merits and irreparable harm." *Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers*, 205 F. Supp. 3d 4, 26 (D.D.C. 2016) (quoting *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011)). Either way, "it is clear that failure to show a likelihood of irreparable harm remains, standing alone, sufficient to defeat the motion." *Navajo Nation v. Azar*, 292 F. Supp. 3d 508, 512 (D.D.C. 2018); *see also Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) ("A movant's failure to show any irreparable harm is therefore grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief.").

## III. Analysis

### A. Standing

As a threshold matter, Defendants challenge Plaintiffs' standing. To show standing for purposes of a preliminary injunction, Plaintiffs must show that it is substantially likely that at least one of them "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016); *Americans for Safe Access v. Drug Enf't*

5

*Admin.*, 706 F.3d 438, 443 (D.C. Cir. 2013) (noting that a court need only find that one plaintiff has standing); *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015) (explaining that, on a preliminary injunction, plaintiffs must show that standing is substantially likely). The standing inquiry is slightly different when a plaintiff seeks to vindicate a procedural right, such as having been unlawfully denied the opportunity to comment on a proposed rule. *See Mendoza v. Perez*, 754 F.3d 1002, 1010 (D.C. Cir. 2014). Specifically, "a plaintiff asserting a procedural violation must show 'a causal connection between the government action that supposedly required the disregarded procedure and some reasonably increased risk of injury to its particularized interest.'" *Iyengar v. Barnhart*, 233 F. Supp. 2d 5, 12–13 (D.D.C. 2002) (quoting *Fla. Audubon Soc'y. v. Bentsen*, 94 F.3d 658, 664 (D.C. Cir. 1996)). A plaintiff need not show that the agency would have acted any differently. *Mendoza*, 754 F.3d at 1010. Yet even in the context of a procedural injury, "the injury in fact requirement is a hard floor of Article III jurisdiction that cannot be altered by statute." *Ctr. for Biological Diversity v. Envtl. Prot. Agency*, 861 F.3d 174, 183 (D.C. Cir. 2017). Once a plaintiff clears that hurdle, through, "the normal standards for immediacy and redressability are relaxed." *Mendoza*, 754 F.3d at 1010.

At least one Plaintiff here is substantially likely to show standing. Applicant Plaintiff K.K., for example, must now expend additional time and money merely to enter the lottery, even if he does not win it. *See, e.g.*, ECF No. 3-4 ("K.K. Decl.") ¶¶ 6–13. This is enough to satisfy Article III's injury-in-fact requirement. *See Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 983 (2017) ("For standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'"). But for the Passport Rule, he would not have had to expend that time and money, at least at this early stage. Thus, his injury is "fairly traceable" to the rule. *See Iyengar*, 233

F. Supp. 2d at 11 (explaining that "certainty is not the touchstone of the causation inquiry"). And his injury is redressable. If the Court were to vacate the Passport Rule, K.K. would not have to incur these costs before entering the lottery and he could comment on the rule before it went into effect. Indeed, K.K. also satisfies the standing requirements for a procedural injury. The procedural right K.K seeks—the opportunity to comment on the Passport Rule to explain why it makes his pursuit of a diversity visa harder—"is quite obviously linked to [his] concrete interest" in participating in the lottery without these added costs. *Iyengar*, 233 F. Supp. 2d at 13.[3] The Court therefore finds that "at least one plaintiff [is substantially likely to have] standing," *Tuaua v. United States*, 951 F. Supp. 2d 88, 93 (D.D.C. 2013).

Defendants also argue that Plaintiffs may not bring their claims because they are outside the relevant zone of interests of the INA. Opp'n at 21–24. The Court disagrees. The zone of interests test simply asks "whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014). Under the APA, "the test is not 'especially demanding.'" *Id.* at 130 (quoting *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 225 (2012)). This is so because the APA "permits suit for violations of numerous statutes of varying character that do not themselves include causes of action for judicial review." *Id.* To satisfy this

---

[3] Additionally, to the extent Defendants argue that, as a categorical matter, non-U.S. persons cannot raise an APA procedural challenge in this context, "they cite no relevant case law for that proposition." *Nat'l Venture Capital Ass'n v. Duke*, 291 F. Supp. 3d 5, 13 (D.D.C. 2017); *see also, e.g.*, *Sec. Indus. & Fin. Markets Ass'n v. United States Commodity Futures Trading Comm'n*, 67 F. Supp. 3d 373, 403 (D.D.C. 2014) ("As the 'object' of these Title VII Rules' extraterritorial applications, SG's and Deutsche Bank AG's standing to challenge them—as well as the Cross–Border Action—is 'self-evident.' Therefore, the Court concludes that plaintiffs have associational standing to challenge the Cross–Border Action and the transaction-level Title VII Rules through their members SG and Deutsche Bank AG." (quoting *Sierra Club v. E.P.A.*, 292 F.3d 895, 900 (D.C. Cir. 2002)).

requirement here, the Court must "look to whether [a plaintiff] fall[s] within the zone of interests sought to be protected by the substantive statute pursuant to which the [State Department] acted: the INA." *Mendoza*, 754 F.3d at 1017. Applicant Plaintiff K.K. is a would-be immigrant who declares that he entered the lottery previously and seeks to do so again. K.K. Decl. ¶ 6. But the Passport Rule requires him to expend additional time and money before he may do so. Thus, he is undoubtedly "the subject of the contested regulatory action." *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399 (1987). And his interests are obviously not "so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Mendoza*, 754 F.3d at 1017 (quoting *Clarke*, 479 U.S. at 399).

### B. Irreparable Harm

A substantial likelihood of standing established, the Court turns to the factors Plaintiffs must show to entitle them to a preliminary injunction. Failing to show a likelihood of irreparable harm is fatal to a request for a preliminary injunction, regardless of a party's showing on the other relevant factors. *See, e.g.*, *Alcresta Therapeutics, Inc. v. Azar*, 318 F. Supp. 3d 321, 325 (D.D.C. 2018) ("Under *Winter*, even a 'strong likelihood of prevailing on the merits' cannot make up for a deficient showing of irreparable injury." (quoting *Winter*, 555 U.S. at 21–22)). "The standard for irreparable harm is particularly high in the D.C. Circuit." *Fisheries Survival Fund v. Jewell*, 236 F. Supp. 3d 332, 336 (D.D.C. 2017). To satisfy this "high standard," the alleged irreparable injury "must be both certain and great," and it "must be beyond remediation." *Chaplaincy*, 454 F.3d at 297 (second and third quoting *Wisc. Gas Co. v. F.E.R.C.*, 758 F.2d 669, 674 (D.C. Cir. 1985)). Additionally, to demonstrate irreparable harm, "the movant must show that the alleged harm will directly result from the action which the movant seeks to enjoin." *Wisc. Gas Co.*, 758 F.2d at 674.

Applicant Plaintiffs argue that the "cost and time of obtaining a passport" will effectively preclude them from applying for this year's lottery. PI Mem. at 12–13. They argue that "losing the opportunity to apply for a diversity visa in this year's lottery" would constitute irreparable harm that "cannot be subsequently redressed." *Id.* at 26. Thus, the harm they allege is the loss of the *chance* to apply for an immigrant visa, not the loss of the visa itself. *See id.* at 26. "Although the benefit is not guaranteed," they explain, "it is a significant tangible benefit that cannot be obtained without participation in the process, and the chance of attainment is eliminated by the challenged rule." *Id.* at 28. Family Plaintiffs, for their part, argue that their irreparable harm flows from that same loss of a chance. They contend that "the denial of the conditional benefit of family unification through this year's Diversity Visa Program would also comprise an irreparable injury that cannot be remedied once the lottery has taken place." *Id.* at 28.[4]

Plaintiffs have not shown that missing the lottery this year will subject them to irreparable harm under the law of this Circuit. First, the loss of such a small chance is not sufficiently "great" to warrant a preliminary injunction. As discussed above, to warrant preliminary relief, the alleged injury must not only be "certain" but also "great." *Wisc. Gas Co.*, 758 F.2d at 674. Even the certain loss of a tiny—about 0.8%—chance of a desired benefit

---

[4] Plaintiffs also aver that they "suffer the ongoing injury of being subject to a rule about which they were unable to comment." *Id.* Although they argue that procedural injuries "bolster" the "case for a preliminary injunction," Plaintiffs concede in their brief that their procedural injury alone does not warrant emergency relief. *Id.* at 29 (quoting *Fund for Animals v. Norton*, 281 F. Supp. 2d 209, 222 (D.D.C. 2003)). Although they briefly tried to argue otherwise at the hearing, *see* Rough Tr. at 25:9–26:20, "courts generally 'will not base a finding of "irreparable injury" on a procedural violation standing alone,'" *Elk Assocs. Funding Corp. v. U.S. Small Bus. Admin.*, 858 F. Supp. 2d 1, 31 (D.D.C. 2012) (quoting *Am. Assn for Homecare v. Leavitt*, Civil Action No. 08-0992 (RMU), 2008 WL 2580217, at *5 (D.D.C. June 30, 2008)); *see also* Rough Tr. at 59:21–60:9 (acknowledging later in the hearing that the alleged procedural injury "bolster[s] plaintiff's case for a preliminary injunction" when added to other injury).

9

cannot suffice under this exacting standard. While "there is some appeal to the proposition that any damage, however slight, which cannot be made whole at a later time, should justify injunctive relief," the Court cannot ignore that "some concept of magnitude of injury is implicit in the [preliminary injunction] standards." *Gulf Oil Corp. v. Dep't of Energy*, 514 F. Supp. 1019, 1026 (D.D.C. 1981). Plaintiffs have cited no case in which a court found that the loss of such a small chance at a benefit met the irreparable harm standard, even a benefit as potentially significant as a diversity visa.

Second, the "greatness" of Plaintiffs' injury is also undermined by the lottery's annual repetition. By statute, the State Department must issue diversity visas every year, 8 U.S.C. § 1153(c)(1), and must do so randomly, 8 U.S.C. § 1153(e)(2). Plaintiffs thus are not losing their *only* chance at a diversity visa if they do not participate in the lottery this year. That the lottery is held annually further underscores why the alleged injury is insufficiently "great" to be irreparable. *Cf. Reynolds v. Sheet Metal Workers, Local 102*, 702 F.2d 221, 226 (D.C. Cir. 1981) ("The uncertainty of future opportunities emphasizes the irreparable character of the injury class members would sustain if discriminatory selection were permitted.").

Third, at least on this record, the lack of a direct connection between the alleged injury and the Passport Rule further weakens Plaintiffs' case for irreparable harm. An irreparable injury must "directly result from the action which the movant seeks to enjoin." *Wisc. Gas Co.*, 758 F.2d at 674. Applicant Plaintiffs allege that they cannot obtain a passport in time to enter the lottery because they either lack the money to do so or learned about the new requirement too late.

But these obstacles, to the extent that they exist, do not "directly result" from the Passport Rule for irreparable harm purposes.[5]

For example, Applicant Plaintiffs E.B. and K.K. assert that they "could manage to incur the substantial costs involved to obtain a passport with the assistance of family and friends." Compl. ¶¶ 51, 56. But they also allege that that assistance "is not available merely for [their] application for the Diversity Visa Program." *Id.* In other words, their family and friends are, perhaps understandably, unwilling to help them pay for their passports *unless* they win the lottery. But for that reason, their inability to pay for a passport before winning the lottery does not "directly result" from the Passport Rule itself.

Similarly, Applicant Plaintiffs assert that they cannot obtain passports in time to register for the lottery by November 5. Applicant Plaintiffs E.B. and Desta claim that they did not learn about the Passport Rule until September 2019. *Id.* ¶¶ 50, 52, 60–61. And while Applicant Plaintiff K.K. learned about the rule "[t]his summer," he declares that at this point obtaining the necessary documents to support a passport application would take too long. K.K. Decl. ¶¶ 8, 12–13, 15. Applicant Plaintiffs each allege that obtaining a passport in their home countries is difficult and time-consuming, *see* PI Mem. at 12–13, and the Court has no reason to doubt their representations. All the same, the Passport Rule was published in the Federal Register on June 5,

---

[5] Defendants point to these intervening causes as evidence that Plaintiffs have failed to sufficiently plead causation and thus lack standing. *See* Opp'n at 16–18. As discussed above, the Court does not find these arguments persuasive in the standing context. *See Animal Legal Def. Fund, Inc. v. Glickman*, 154 F.3d 426, 441 (D.C. Cir. 1998) ("It is well settled that a plaintiff has standing to challenge conduct that indirectly results in injury. . . . We are concerned here not with the length of the chain of causation, but on [sic] the plausibility of each of the links that comprise the chain." (quoting *Nat'l Wildlife Fed'n v. Hodel*, 839 F.2d 694, 705 (D.C. Cir. 1988)). The standard demanded by a preliminary injunction—that the injury must "directly result" from the action sought to be enjoined—requires a tighter causal link than is required for standing.

2019. *See* Passport Rule. And while the Court understands that Applicant Plaintiffs likely do not regularly check the *Federal Register*, the rule's publication there serves to provide them notice as a matter of law. 44 U.S.C. § 1507; *see also Nat'l Ass'n of Mfrs. v. N.L.R.B.*, 717 F.3d 947, 953 (D.C. Cir. 2013), *overruled on other grounds by Am. Meat Inst. v. U.S. Dep't of Agric.*, 760 F.3d 18 (D.C. Cir. 2014) ("The Federal Register Act further provides that the filing of a document required to be published in the Federal Register constitutes constructive notice to anyone subject to or affected by it."). None of the Applicant Plaintiffs' representations suggest that, had they started the process of obtaining passports when they had constructive notice of the rule in June, they would not have been able to secure them five months later, by November 5, 2019. This amounts to another reason why the Applicant Plaintiffs' harm from missing the lottery this year does not "directly result" from the Passport Rule itself.

Another court in this District recently found an insufficient causal connection between government action and alleged irreparable harm in the visa context in *Feng Wang v. Pompeo*, 354 F. Supp. 3d 13 (D.D.C. 2018). That case concerned the EB-5 visa program, which allows foreign immigrant investors, their spouses, and their young unmarried children to be admitted to the United States as permanent residents. *Id*. at 17. The annual number of EB-5 visas is limited and, because the demand for EB-5 visas outpaces the supply, prospective EB-5 immigrant investors from China must wait years for a visa. *Id.* at 16–19. Immigrant investor plaintiffs challenged the State Department's policy of counting family members towards the annual limit—which they alleged caused the long wait—as unlawful. *Id.* at 19. They argued that without an injunction, their children would be too old to join them by the time they obtained visas. *Id.* at 25–26. And as a result, they asserted, they would be irreparably harmed because their families would be separated. *Id.* In denying their motion for a preliminary injunction, the

court found that the causal link between the government's policy and the potential separation of the plaintiffs' families was not direct enough to show irreparable harm. *Id.* at 25–26, 28. The Court reasoned that "State's counting policy does not, in and of itself, cause family separation. Rather, the causal connection is between the counting policy and the choice investors face if their children age out by the time EB-5 visas become available." *Id.* at 26.

In support of their irreparable harm claim, Plaintiffs cite cases that present a few distinct scenarios, but none are akin to the unusual circumstances here. They point to several cases from outside this Circuit in which courts have held that the loss of a chance to bid on a contract can constitute irreparable harm. PI Mem. at 26–27; *see, e.g.*, *Georgia by & through Ga. Vocational Rehab. Agency v. United States by & through Shanahan*, 2:19-CV-00045, 2019 WL 2320878, at *9 (S.D. Ga. May 30, 2019). In *Ga. Vocational Rehab. Agency*, for example, the court noted that "[w]ithout a preliminary injunction, Defendants will be allowed to award the contract to another party and Plaintiffs will be unable to compete for the contract since it has been eliminated from consideration." *Id.* But in that case, the loss of the chance at issue was far "greater" than the loss of the long odds Applicant Plaintiffs have in the lottery. In fact, only four parties had bid on the contract at issue there. *Id.* at *3. More importantly, the court found that the plaintiffs were likely to succeed on the merits of their claim that the contract should have been awarded to them in the first place. *Id.* at *18; *see also Kansas v. United States*, 171 F. Supp. 3d 1145, 1155–56, 1158–65 (D. Kan. 2016) (finding that the plaintiff—whose competitive bid would likely take priority over other bidders and who had won similar contracts in the past—was likely to succeed

on the merits). And unlike the plaintiffs in those cases, Applicant Plaintiffs are not losing out on a unique opportunity because the lottery is held annually.[6]

Plaintiffs also refer to cases in which courts have held that the loss of a chance to take the bar exam can constitute irreparable harm. *See, e.g.*, *Enyart v. Nat'l Conference of Bar Examiners, Inc.*, 630 F.3d 1153, 1166 (9th Cir. 2011). Again, the harm in those cases was "greater" than that faced by Plaintiffs here because in all likelihood those plaintiffs had far higher chances of passing the bar exam than Applicant Plaintiffs have of winning the lottery. Moreover, in those cases, courts found that the plaintiffs' loss of a chance to take the exam would harm them in specific ways beyond mere delay.[7]

---

[6] Other cases cited by Plaintiffs are even more inapposite. Plaintiffs do not identify any risk to a business's ongoing viability. *See Rogers Grp., Inc. v. City of Fayetteville, Ark.*, 629 F.3d 784, 790 (8th Cir. 2010). They are not similarly situated to a contractor who is already performing on a contract in an industry where having a contract terminated will hamper the contractor's competitiveness in the future. *See Starlite Aviation Operations Ltd. v. Erickson Inc.*, No. 3:15-CV-00497-HZ, 2015 WL 2367998, at *2 (D. Or. May 18, 2015). And they are not like experienced firefighters who, having shown they are likely to succeed on the merits of an employment discrimination case, would be "unable to gain experience and unable to seek the next rank" without an injunction. *Howe v. City of Akron*, 723 F.3d 651, 662 (6th Cir. 2013).

[7] For example, *Enyart* involved a blind plaintiff seeking testing accommodations under the Americans with Disabilities Act. *Id.* at 1156. Along with losing "the opportunity to pursue her chosen profession," the court found that a delay would have left her "unable to take advantage of the opportunity afforded by [a] two-year, public-interest fellowship as a result of her inability to practice law." *Id.* at 1166 ("Because the fellowship is of limited duration, '[a] delay, even if only a few months, pending trial represents precious, productive time irretrievably lost' to Enyart." (quoting *Chalk v. U.S. Dist. Court Cent. Dist. of California*, 840 F.2d 701, 710 (9th Cir. 1988)). In *Bonnette v. D.C. Court of Appeals*, the court noted that the plaintiff had "devoted substantial time and effort to preparing for the [bar exam], which [would] have been effectively wasted if she [had to] wait to take the test at a later date." 796 F. Supp. 2d 164, 187 (D.D.C. 2011). And in *Jones v. Nat'l Conference of Bar Examiners*, the court observed that "to require Plaintiff to take the MPRE during the school year [would] interfere with her abilities to attend to her law school studies and perform to the best of her ability." *See* 801 F. Supp. 2d 270, 286 (D. Vt. 2011) (also noting that "[t]his, in turn, may affect the employment opportunities available to Plaintiff as potential employers evaluate her law school performance").

## IV. Conclusion

For all the above reasons, the Court holds that Plaintiffs are substantially likely to have standing, but they have not shown that, absent a preliminary injunction, they will suffer irreparable harm. As a result, Plaintiffs' motion for a preliminary injunction will be denied. A separate order will issue.

/s/ Timothy J. Kelly<br>
TIMOTHY J. KELLY<br>
United States District Judge

Date: November 4, 2019