UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| E.B. *et al.*,<br><br>        *Plaintiffs*,<br><br>    v.<br><br>U.S. DEPARTMENT OF STATE *et al.*,<br><br>        *Defendants*. | Civil Action No. 19-2856 (TJK) |

### MEMORANDUM OPINION

In 2019, the State Department issued an interim final rule requiring that applicants to the Diversity Visa Program hold a valid passport. Plaintiffs, two foreign nationals and their relatives in the United States, later prevailed in their suit challenging the Department's adoption of that rule. The Court held that the Passport Rule was unlawfully promulgated without notice-and-comment procedures and therefore denied Defendants' motion to dismiss, granted Plaintiffs' motion for summary judgment, and vacated the rule. Now before the Court is Plaintiffs' Motion for Attorney's Fees and Costs Pursuant to the Equal Access to Justice Act. The Magistrate Judge issued a Report and Recommendation proposing the Court grant in part Plaintiffs' motion. Reviewing that Report and Recommendation de novo, the Court rejects it and concludes that Defendants' position on whether the foreign affairs function exception to the notice-and-comment requirement applied, though incorrect, was substantially justified. Thus, Plaintiffs are not entitled to recover attorney's fees.

**I.    Background**

This case's factual background is set forth in the Memorandum Opinion granting Plaintiffs' motion for summary judgment, *E.B. v. U.S. Dep't of State*, 583 F. Supp. 3d 58 (D.D.C. 2019); *see*

*also* ECF No. 50, and Judge Meriweather's Report & Recommendation, ECF No. 58 ("R&R"). The Court assumes familiarity with the factual and procedural background reflected in those opinions and summarizes only the relevant details below.

The Diversity Visa Program, established under the Immigration and Nationality Act of 1990, *see* Pub. L. No. 101-649, § 131, 104 Stat. 4978, 4997 *et seq.* (1990) (codified at 8 U.S.C. § 1153(c)), allows the State Department to issue 55,000 diversity visas every year to individuals selected at random from a pool of applicants from countries with low immigration rates to the United States. *See id.*; 8 U.S.C. §§ 1151(e), 1153(e)(2). Historically, only those that ultimately won the lottery had to obtain a passport. *See* 84 Fed. Reg. 25,989, 25,989 (June 5, 2019) (to be codified at 22 C.F.R. § 42.33); 22 C.F.R. § 42.64(b). But in mid-2019, the State Department promulgated the Passport Rule, requiring that individuals who seek to participate in the lottery possess a valid passport *when they register*. 84 Fed. Reg. at 25,989; *see also* 22 C.F.R. § 42.33(b)(viii). Because the Passport Rule was styled as an interim final rule, it became effective upon publication. *See* 84 Fed. Reg. at 25,989. The Department invoked the foreign affairs exception of the Administrative Procedure Act ("APA"), 5 U.S.C. § 553(a)(1), and declined to follow standard notice-and-comment procedures, *see* 84 Fed. Reg. at 25,990.

Plaintiffs—two individuals who live in eligible countries but could not apply for the Program due to the passport requirement, as well as two of their siblings in the United States—sued Defendants, arguing that the promulgation of the Passport Rule without notice-and-comment rulemaking was unlawful under the APA. *See* ECF No. 27. The Court denied Plaintiffs' motion for a preliminary injunction based on lack of irreparable harm. ECF No. 21 at 8–14. Defendants then moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that the State Department provided Plaintiffs with legally sufficient notice and an opportunity to respond and, in any

event, that the "foreign affairs function" exception to the APA's notice-and-comment requirements applied. ECF No. 28-1. Plaintiffs moved for summary judgment, ECF No. 38, which the Court granted in an order simultaneously denying Defendants' motion to dismiss and vacating the rule, ECF No. 49.

Plaintiffs then moved for attorney's fees under the Equal Access to Justice Act (EAJA). ECF No. 51. Defendants opposed the motion. ECF No. 54. In their response, Plaintiffs conceded that they had mistakenly included some tasks that are not compensable under the EAJA, so they agreed to lower their request from $70,697.79 to $65,573.45. ECF No. 57 at 5. The Court referred the motion to a magistrate judge to deliver a report and recommendation. Minute Order of September 2, 2022. Magistrate Judge Meriweather recommended that the Court grant in part Plaintiffs' motion and award them $64,538.45 in attorney's fees and costs, a $1035 reduction from Plaintiffs' request to account for purely clerical tasks not recoverable under the EAJA. R&R at 21. Defendants object to the R&R and request that the Court reject the Magistrate Judge's findings in their entirety, while Plaintiffs ask that they be adopted in full. ECF Nos. 60, 62.

**II.     Legal Standards**

The EAJA allows for the prevailing party in a civil suit against the United States to recover attorney's fees and costs "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). Plaintiffs must first establish that they are the "prevailing party." *LePage's 2000, Inc. v. Postal Regul. Comm'n*, 674 F.3d 862, 866 (D.C. Cir. 2012). Then the burden shifts to the government to show that their position was substantially justified or that special circumstances make the award unjust. *Id.* The phrase "substantially justified" is given "the most naturally conveyed connotation," i.e., "'justified in substance or in the main—that is, justified to a degree that could satisfy a

3

reasonable person.'" *Id.* (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). Finally, Plaintiffs must show that the fees and costs that they request are reasonable. *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 969–70 (D.C. Cir. 2004).

When a magistrate judge submits a report and recommendation, the parties may choose to file "specific written objections." *See* Fed. R. Civ. P. 72(b)(2). The Court "must determine de novo any part of the magistrate judge's" report and recommendation to which a proper objection is made. Fed. R. Civ. P. 72(b)(3). The Court reviews only for clear error any part of the magistrate judge's report and recommendation that is not objected to, that is objected to merely in a "general" and "conclusory" fashion, or that is objected to in a manner that simply rehashes the party's "original arguments." *See IMAPizza, LLC v. At Pizza Ltd.*, No. 17-cv-2327 (TJK) (GMH), 2021 WL 3168132, at *2 (D.D.C. July 27, 2021); *Wu Xiaofeng v. Pompeo*, No. 15-cv-1040 (EGS), 2019 WL 1697868, at *5 (D.D.C. Apr. 17, 2019). "Clear error exists only when the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Momoh v. Osayande*, 564 B.R. 1, 3 (D.D.C. 2017) (internal quotation marks omitted). When objecting to a report and recommendation, "the parties may not present new issues or arguments to the district judge." *IMAPizza, LLC*, 2021 WL 3168132, at *2 (internal quotation marks omitted); *see also Aikens v. Shalala*, 956 F. Supp. 14, 19 (D.D.C. 1997). The Court "may accept, reject, or modify the recommended disposition." Fed. R. Civ. P. 72(b)(3).

### III.   Analysis

Defendants attack the Magistrate Judge's R&R on multiple grounds, arguing first that Defendants' position on the merits of the underlying litigation was substantially justified and, second, that Plaintiffs' attorney's fee request was excessive for a myriad of reasons. ECF No. 60 at 2. Reviewing de novo, *see* Fed. R. Civ. P. 72(b)(3), the Court agrees with Defendants on their first

4

point, that their position on whether the foreign affairs function exception applied to the Passport Rule—though incorrect—was still substantially justified. Thus, Plaintiffs are not entitled to attorney's fees, and the Court's analysis need proceed no further.

The threshold EAJA question is an easy one: Defendants do not contest that Plaintiffs are the prevailing party, nor could they. ECF No. 60. Plaintiffs prevailed on summary judgment and the Court vacated the challenged rule. ECF No. 50. So the burden shifts to Defendants to show that their position at issue was substantially justified, in other words, "justified to a degree that could satisfy a reasonable person" with a "reasonable basis both in law and fact." *Halverson v. Slater*, 206 F.3d 1205, 1208 (D.C. Cir. 2000); *see Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Although the merits determination informs the substantial justification question, *see F.J. Vollmer Co. v. Magaw*, 102 F.3d 591, 595 (D.C. Cir. 1996), the government's position may be substantially justified even if the agency action is invalidated under the APA, *see LePage's 2000, Inc.*, 674 F3d at 866. Defendants have met that burden.

Defendants argue that their position was substantially justified because the Passport Rule could reasonably fall under the foreign affairs function exception to notice-and-comment rulemaking as an effort to prevent fraud in the Diversity Visa lottery. ECF No. 60 at 7–8; *see* 5 U.S.C. § 553(a)(1) (exempting rulemaking from notice-and-comment requirements "to the extent that there is involved . . . a military or foreign affairs function of the United States"). Obviously, in resolving the case, the Court disagreed, reasoning that the rule did not "clearly and directly involve activities or actions characteristic to the conduct of international relations." *E.B.*, 583 F. Supp. 3d at 64. Still, for three main reasons, the Court finds that Defendants' position was substantially justified, even if it did not carry the day.

First, the law on the contours of the foreign affairs function exception is largely undeveloped. As the Court acknowledged in its opinion, "[t]here is sparse case law in—or outside—this Circuit construing [the foreign affairs function] exception." *Id.* at 62–63. Moreover, Defendants did have *some* law in their corner. For example, in somewhat analogous circumstances a court in this district had recently upheld a rule promulgated without notice-and-comment procedures that subjected family members of certain visa holders to the same foreign residency requirement that applies to the primary visa holder. *Raoof v. Sullivan*, 315 F. Supp. 3d 34, 43–44 (D.D.C. 2018). Even though the scope of the foreign affairs function exception was not litigated in that case, the court upheld the rule by reasoning that the rule "relate[d] to the foreign affairs and diplomatic duties conferred upon the Secretary of State and the State Department."[1] *Id.*

Second, the legislative history behind the foreign affairs function exception hints at a broader reading than the Court accepted. Consistent with the passage from *Raoof* above, Defendants argued the legislative history suggested that "the [foreign affairs] exception must be construed as applicable to most functions of the State Department." ECF No. 42 at 17 (alteration in original)

---

[1] Plaintiffs point out that in their motion for summary judgment, they relied on a June 2020 decision in which this Court held that the foreign affairs function exception did not cover a Department of Homeland Security rulemaking related to asylum procedures. *Capital Area Immigrants' Rights Coalition (CAIR) v. Trump*, 471 F. Supp. 3d 25, 51–57 (D.D.C. 2020). That decision, of course, was a blow to Defendants' position on the foreign affairs function exception in this case. But when *CAIR* was decided, Defendants had already advanced their position in their motion to dismiss as well as in opposition to Plaintiffs' motion for preliminary injunction. *See Select Specialty Hosp.-Denver, Inc. v. Azar*, No. 10-cv-1356, 2020 WL 3469685, at *1 (D.D.C. June 25, 2020) (holding that "position was substantially justified at the time it was formulated" notwithstanding later Supreme Court decision issued after the parties completed briefing); *Hill v. Gould*, 555 F.3d 1003, 1008 (D.C. Cir. 2009). And even after that point, for all the reasons laid out above—the *Raoof* decision, the relevant legislative history, and the State Department's unchallenged practice of invoking the exception in connection with visas and passports—Defendants still had reasonable grounds to try to distinguish the *CAIR* decision, which did not involve the State Department.

(quoting Tom C. Clark, *Attorney General's Manual on the Administrative Procedure Act* 27 (1947)). Again, although the Court found that argument unpersuasive for reasons it need not explain again now, this legislative history contributed to the reasonableness of Defendants' position.

Third, Defendants also cite over two hundred times when the State Department's Visa Office invoked the foreign affairs function exception without challenge.[2] To be sure, none of this history commands deference on whether Defendants were correct to invoke the foreign affairs function exception and bypass notice-and-comment procedures on the Passport Rule. But given the lack of clarity in the law on the exception's scope, the State Department's routine, long-standing reliance on it in the administration of visas does inform whether the agency's position was reasonable. *See Or. Nat. Res. Council v. Madigan*, 980 F.2d 1330, 1331–32 (9th Cir. 1992) (considering "extraneous circumstances bearing upon the reasonableness of the government's decision" as part of the substantial justification analysis) (citation omitted).

## IV.    Conclusion

For the above reasons, the Court rejects the Magistrate Judge's R&R insofar as it recommends that Defendants' position on whether the foreign affairs function exception applied to the Passport Rule was not substantially justified. Rather, the Court finds that Defendants' position

---

[2] ECF No. 54 at 10–11 & n.1; *see, e.g.*, Visas: Documentation of Immigrants Under the Immigration and Nationality Act, Passport Requirements for Immigrants, 18 Fed. Reg. 6774 (Oct. 27, 1953) (amending regulation on passport requirements for immigrants); Visas: Documentation of Immigrants Under the Immigration and Nationality Act, as Amended, 73 Fed. Reg. 7670 (Feb. 11, 2008) (revising photo requirement for diversity visa applications); Visas: Diversity Immigrants, 81 Fed. Reg. 63,694 (Sept. 16, 2016) (similar); Visas: Documentation of Immigrants Under the Immigration and Nationality Act, as Amended, 79 Fed. Reg. 32,481 (June 5, 2014) (amending visa classification for certain individuals who lost or renounced U.S. citizenship related to domestic violence or death); Visas: Classification of Immediate Family Members as A, C-3, G, and NATO Nonimmigrants, 81 Fed. Reg. 88,101 (Dec. 7, 2016) (amending definition of family member for purposes of certain visa classifications).

was substantially justified. Thus, Plaintiffs are not entitled to an award of attorney's fees. A separate order will issue.

/s/ Timothy J. Kelly  
TIMOTHY J. KELLY  
United States District Judge

Date: September 20, 2023